UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:95 CR 16 |
| | ) | |
| OBEDIAH WILSON | ) | |

## OPINION AND ORDER

In 1995, defendant Obediah Wilson pleaded guilty to giving false declarations before a grand jury in violation of 18 U.S.C. § 1623. Mr. Wilson was sentenced to three years of probation and was ordered to pay restitution in the amount of $4,071.96. Mr. Wilson has now moved to expunge the judicial record of his conviction. (DE # 35.) The government has filed a brief in opposition to this motion. (DE # 38.) For the following reasons, that motion is denied.

The Seventh Circuit has held that "district courts . . . have jurisdiction to expunge records maintained by the judicial branch." *United States v. Flowers*, 389 F.3d 737, 739 (7th Cir. 2004) (citing *United States v. Janik*, 10 F.3d 470, 472 (7th Cir. 1993)). "The test for the expungement of judicial records is a balancing test: 'if the dangers of unwarranted adverse consequences to the individual outweigh the public interest in maintenance of the records, then expunction is appropriate.'" *Id.* (quoting *Janik*, 10 F.3d at 472). Thus, the Seventh Circuit has adopted a balancing test, although, as the Seventh Circuit has noted, "the balance very rarely tips in favor of expungement." *Id.*

Several Seventh Circuit cases are instructive on this issue. In *Scruggs v. United States*, Scruggs, who had been found not guilty of being a felon in possession of a

firearm, filed suit to expunge his arrest record. 929 F.2d 305, 305 (7th Cir. 1991). Scruggs argued that because he was acquitted, his arrest record should be expunged. *Id.* The district court reasoned that this was not a sufficient justification for expungement, and the Seventh Circuit agreed. *Id.* at 307.

In *Janik*, the defendant was convicted of unlawful possession of two unregistered guns, but the defendant's conviction was reversed for a violation of the Speedy Trial Act. *Janik*, 10 F.3d at 470. The case was remanded, and the district court dismissed the indictment. *Id.* Eight years later, the defendant moved to expunge the record of his conviction. *Id.* The defendant argued that his conviction should be expunged because he feared he would not obtain promotions in the United States Army Reserve and because he feared he would be rejected from civilian employment. *Id.* at 472-73. The defendant presented evidence that he had already been rejected from one job because of the conviction. *Id.* at 473. The Seventh Circuit affirmed the district court's refusal to expunge the defendant's conviction. *Id.* The court cited to *Scruggs* and reasoned that if Scruggs, who had been acquitted, was not entitled to have his record expunged, the defendant in *Janik*, who had actually been found guilty, had a weaker argument in support of expungement. *Id.*

Finally, the defendant in *Flowers*, who had pleaded guilty to an offense for which she was sentenced to probation, moved to expunge all records of her criminal conviction held by the judicial branch. *Flowers*, 389 F.3d at 738. The district court granted the defendant's

motion, and the government appealed. *Id.* The Seventh Circuit reversed the district court. *Id.* 741.

In reaching that decision, the court analyzed the test from *Janik*: "'if the dangers of unwarranted adverse consequences to the individual outweigh the public interest in maintenance of the records, then expunction is appropriate.'" *Id.* at 739 (quoting *Janik*, 10 F.3d at 472). The court noted that the public interest in maintaining accurate records is strong:

> That interest is strong as evidenced by the statutory admonition found in 28 U.S.C. § 534 which requires the Department of Justice to collect criminal records and make them available to state and local law enforcement agencies. Records relating to a person's criminal conduct are vital tools to law enforcement and are, at least as of today, essential to the computation of sentences under the United States Sentencing Guidelines. Other evidence of the weight of the public interest can be seen in the long tradition of open proceedings and public records, which is the essence of a democratic society.

*Id.* The court reasoned that to "outweigh that interest, 'unwarranted adverse consequences' must truly be extraordinary." *Id.* The court also noted that there are some "adverse consequences which attend every arrest and conviction[,]" like trouble finding employment, that are unfortunate but are "generally not considered *unwarranted* adverse consequences." *Id.* (emphasis in original).

The defendant in *Flowers* argued that her conviction should be expunged because her conviction would limit her future employment opportunities. *Id.* at 738. The Seventh Circuit, however, determined that the defendant's case involved only "the usual attendant consequences." *Id.* at 740. Additionally, the defendant had provided no evidence of actual

3

loss of employment opportunities. The court did, however, give an example of the type of unwarranted adverse consequence that would justify expungement:

> Just what sort of consequence might be "unwarranted" and of significance sufficient to outweigh the public interest in the maintenance of records is somewhat difficult to predict. One clear example is found in *United States v. McLeod,* 385 F.2d 734 (5th Cir. 1967). The case arose out of a voter registration drive in Selma, Alabama, in 1963. The judge found that there was a pattern of harassment (including arrests on minor charges) carried out by the authorities of Dallas County to intimidate African-American citizens from registering to vote. After laying out the "chilling effect" that the "pattern of baseless arrests and prosecutions revealed," the judge found that in order to grant relief it was necessary to put the persons arrested in the position they would have had, were it not for the arrests. At 741. While there is no specific mention in this vintage case of the presently accepted balancing test, the reasoning was that "[s]etting aside a few criminal convictions is far less disruptive of the normal functioning of state government than is the voiding of an election." At 749. It is not hard to see why the situation in Selma could be considered extraordinary.

*Id.* at 740.

Turning to the case at hand, Mr. Wilson argues that his conviction be expunged because he has become a pastor at his church, and his conviction prevents him from entering prisons and participating in his church's prison ministries. (DE # 35 at 3-4.) The government argues that Mr. Wilson's conduct does not rise to the level of an extraordinary unwarranted adverse consequence.

The court agrees with the government. Unlike in *Scruggs* and *Janik*, there is nothing in this case that casts doubt on Mr. Wilson's arrest or criminal conviction. Although it is unfortunate that Mr. Wilson cannot participate in his church's prison ministries, this is not the type of unwarranted adverse consequence, like the situation found in the *McLeod* case, that would justify expungement.

4

There is no doubt that Mr. Wilson should be commended for becoming active in his church, but the inability to participate in his church's prison ministries is not the sort of "extraordinary" adverse consequence that outweighs the "strong" public interest in the maintenance of public records. Therefore, Mr. Wilson's motion to expunge (DE # 35) is **DENIED**.

                                      **SO ORDERED.**

Date: November 26, 2012

                                      s/ James T. Moody
                                      JUDGE JAMES T. MOODY
                                      UNITED STATES DISTRICT COURT